**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CARMACK, Individually and on Behalf of all Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AMAYA INC., DAVID BAAZOV, AND DANIEL SEBAG,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Carmack ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of

the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Amaya Inc. ("Amaya" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Amaya securities between June 8, 2015 and March 22, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its officers and/or directors.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and operate within this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased Amaya securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Amaya provides technology-based products and services in the global gaming and interactive entertainment industries. Amaya's consumer technology business currently offers online and mobile real- and play-money poker and other online and mobile products, including casino, sports betting (also known as sportsbook) and daily fantasy sports. The Company is incorporated in Quebec,

Canada with principal executive offices located at 7600 Trans Canada Hwy, Pointe-Claire, Quebec, Canada H9R 1C8. Amaya's securities trade on the NASDAQ under the ticker symbol "AYA."

8.     Defendant David Baazov ("Baazov") has been the Chief Executive Officer ("CEO"), President, and Chairman of the Board of Directors of Amaya throughout the Class Period.

9.     Defendant Daniel Sebag ("Sebag") has been the Chief Financial Officer ("CFO"), Treasurer, and a director of Amaya since the beginning of the Class Period.

10.     Defendants Baazov and Sebag are sometimes referred to herein as the "Individual Defendants."

11.     Defendant Amaya and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12.     Each of the Individual Defendants:

    a.     directly participated in the management of the Company;

    b.     was directly involved in the day-to-day operations of the Company at the highest levels;

    c.     was privy to confidential proprietary information concerning the Company and its business and operations;

   d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   e. was directly or indirectly involved in the oversight or implementation of the Company's disclosure and procedure controls;

   f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   g. approved or ratified these statements in violation of the federal securities laws.

13. Amaya is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Amaya under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

15.    On December 11, 2014, the Autorité des marchés financiers (the "AMF"), the securities regulatory authority in the Province of Quebec, launched an investigation into trading activities in Amaya securities surrounding the Company's $4.9 billion acquisition of Oldford Group, the owner and operator of leading online poker sites PokerStars and Full Tilt, in August 2014.

16.    The Oldford Group acquisition turned Amaya into the world's largest publicly traded online gaming company.

17.    On June 8, 2015, Amaya common shares began trading on NASDAQ.

18.    On September 30, 2015, Amaya announced that the New Jersey Division of Gaming Enforcement authorized Amaya to operate the PokerStars and Full Tilt brands in New Jersey. Amaya previously entered into an agreement with Resorts Casino Hotel in Atlantic City to provide online poker and casino offerings in New Jersey through the PokerStars and Full Tilt brands.

19.    On March 21, 2016, Amaya fully launched PokerStars online poker and casino in New Jersey.

## Materially False and Misleading Statements

20.    On May 26, 2015, the Company filed a Registration Statement on Form 40-F (the "May Registration Statement") with the SEC as part of listing its common trades on NASDAQ for trading.

21.    Attached as exhibit 99.6 to the May Registration Statement was the Management Discussion and Analysis for the year ended December 31, 2014. Included in the Management Discussion and Analysis, was a section entitled, "Disclosure Controls and Procedures and Internal Control Over Financial Reporting," which stated in relevant part:

**Disclosure Controls and Procedures**

The CEO and CFO have designed DC&P, or have caused them to be designed under their supervision, in order to provide reasonable assurance that:

- material information relating to the issuer is made known to them by others, particularly during the period in which the annual filings are being prepared;

- information required to be disclosed in the annual filings, interim filings or other reports filed or submitted under securities legislation is recorded, processed, summarized and reported within the time periods specified in the securities legislation.

***The CEO and CFO have evaluated, or caused to be evaluated under their supervision, the effectiveness of Amaya's DC&P at the financial year end December 31, 2014. Based on that evaluation, the CEO and CFO concluded that DC&P are effective.***

(Emphasis added).

22.     Attached as exhibits 99.9 and 99.10 to the May Registration Statement were Certifications of Refiled Annual Filings for the year ending December 31, 2014 dated May 1, 2015 and signed by Defendants Baazov and Sebag, respectfully. Both certifications stated in relevant part:

> ***No misrepresentations:*** Based on my knowledge, having exercised reasonable diligence, the annual filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, for the period covered by the annual filings.
>
> \*     \*     \*
>
> ***Responsibility:*** The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 *Certification of Disclosure in Issuers' Annual and Interim Filings,* for the issuer.
>
> \*     \*     \*
>
> ***Reporting to the issuer's auditors and board of directors or audit committee:*** The issuer's other certifying officer(s) and I have disclosed, based on our most recent evaluation of ICFR, to the issuer's auditors, and the board of directors or the audit committee of the board of directors any fraud that involves management or other employees who have a significant role in the issuer's ICFR.

23.     Attached as exhibits 99.13 and 99.14 to the May Registration Statement were Certifications of Interim Filings for the interim period ending

March 31, 2015 dated May 14, 2015 and signed by Defendants Baazov and Sebag,

respectfully. Both certifications state in relevant part:

> ***No misrepresentations:*** Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.
>
> \*       \*       \*
>
> ***Responsibility:*** The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in Regulation 52-109 respecting *Certification of Disclosure in Issuers' Annual and Interim Filings*, for the issuer.

24.     Attached as exhibits 99.30 and 99.31 to the May Registration

Statement were Certifications of Interim Filings for the interim period ending

March 31, 2014 dated May 15, 2014 and signed by Defendants Baazov and Sebag,

respectfully. Both certifications state in relevant part:

> **No misrepresentations**: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.
>
> \*       \*       \*
>
> **Responsibility**: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and

9

procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

25.    Attached as exhibits 99.34 and 99.35 to the May Registration Statement were Certifications of Interim Filings for the interim period ending June 30, 2014 dated August 14, 2014 and signed by Defendants Baazov and Sebag, respectfully. Both certifications state in relevant part:

**No misrepresentations**: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.

*        *        *

**Responsibility**: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

26.    Attached as exhibits 99.38 and 99.39 to the May Registration Statement were Certifications of Interim Filings for the interim period ending September 30, 2014 dated November 14, 2014 and signed by Defendants Baazov and Sebag, respectfully. Both certifications state in relevant part:

**No misrepresentations**: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue

statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.

\* \* \*

**Responsibility**: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

27.     The Class Period begins on June 8, 2015 when Amaya's shares began trading on NASDAQ.

28.     On November 30, 2015, the Company filed a Registration Statement on Form F-10/A (the "November Registration Statement") with the SEC. The November Registration Statement incorporated the May Registration Statement by reference and was signed by Defendants Baazov and Sebag.

29.     On March 14, 2015, the Company filed its annual report for the fiscal year ended December 31, 2015 on Form 40-F (the "2015 40-F") with the SEC. The 2015 40-F contained exhibits including Amaya's Annual Information Form, Auditor Consolidated Financial Statements, and Management's Discussion and Analysis for the year ended December 31, 2015. The 2015 40-F was signed by Defendant Sebag. The 2015 40-F also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Baazov and Sebag

11

attesting to the adequacy of disclosure controls and procedures and that all fraud was disclosed.

30.    Attached as exhibit 99.3 to the 2015 40-F was the Management's Discussion and Analysis for the year ended December 31, 2015. Included in the Management's Discussion and Analysis was a section entitled, "Disclosure Controls and Procedures and Internal Control Over Financial Reporting," which stated in relevant part:

**Disclosure Controls and Procedures**

The CEO and CFO have designed DC&P, or have caused them to be designed under their supervision, to provide reasonable assurance that:

- material information relating to the Corporation is made known to them by others, particularly during the period in which the annual filings are being prepared; and

- information required to be disclosed in the annual filings, interim filings or other reports filed or submitted under securities legislation is recorded, processed, summarized and reported within the time periods specified in the securities legislation.

***The CEO and CFO have evaluated, or caused to be evaluated under their supervision, the effectiveness of the Corporation's DC&P at the financial year end December 31, 2015. Based on that evaluation, the CEO and CFO concluded that the Corporation's DC&P are effective.***

(Emphasis added).

31.     The statements referenced in ¶¶ 20 — 30 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendant Baazov was engaged in illegal insider trading; (2) Amaya had inadequate disclosure controls and procedures; and (3) as a result, Defendants' statements about Amaya's business and operations were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

32.     On March 23, 2016, the AMF issued a press release announcing that it had filed charges against Defendant Baazov, stating in relevant part:

### Matter of Amaya inc. - AMF files 23 charges against three individuals and three companies

MONTRÉAL, March 23, 2016 /CNW Telbec/ - T*he Autorité des marchés financiers (the "AMF") has filed penal proceedings consisting of 23 charges against David Baazov* , Benjamin Ahdoot , Yoel Altman , Diocles Capital inc, Sababa Consulting inc. and 2374879 Ontario inc.

*More specifically, David Baazov, president, CEO, board chairman and a significant shareholder of Amaya inc., is facing five charges, in particular for aiding with trades while in possession of privileged information, influencing or attempting to influence the market price of the securities of Amaya inc., and communicating privileged information.*

13

Benjamin Ahdoot and Yoel Altman are facing, respectively, four and six charges, in particular for trading while in possession of privileged information and influencing or attempting to influence the market price of the securities of Amaya inc.

Diocles Capital inc. is facing five charges of trading while in possession of privileged information and influencing or attempting to influence the market price of the securities of Amaya inc. Sababa Consulting inc. and 2374879 Ontario inc. are facing a total of three charges for trading while in possession of privileged information.

Based on the AMF's investigation, the respondents are alleged in particular to have used, between December 2013 and June 2014, privileged information pertaining to the securities of Amaya inc. for trading purposes. As well, a few of the respondents are alleged to have conspired to commit some of the offences.

"We have made suppressing illegal insider trading and market manipulation a top priority, as this type of conduct profoundly affects public confidence and the integrity of our markets," said AMF President and CEO Louis Morisset.

Under the provisions of the *Securities Act* (Québec), pursuant to which these proceedings are filed, offenders are liable to stiff fines as well as prison terms.

The AMF is pursuing its investigation in this matter and may file other charges.

The *Autorité des marchés financiers* (the "AMF") is the regulatory and oversight body for Québec's financial sector.

 (Emphasis added).

33.    On this news shares of Amaya fell $3.07 per share or approximately 21.5% from its previous closing price to close at $11.18 per share on March 23, 2016, damaging investors.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Amaya securities trade on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Amaya securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Amaya or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Amaya;

- whether the Individual Defendants caused Amaya to issue false and misleading public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements;

- whether the prices of Amaya securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Amaya securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Amaya securities between the time the Defendants failed to disclose or

17

misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various

untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Amaya securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Amaya securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Amaya securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Amaya's disclosure controls and procedures, business operations, and employee conduct.

48.   By virtue of their positions at Amaya, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49.   Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Amaya, the Individual Defendants had knowledge of the details of Amaya's internal affairs.

50.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Amaya. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Amaya's businesses,

operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for Amaya's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Amaya's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Amaya securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged upon the revelation of the alleged corrective disclosures.

51.     During the Class Period, Amaya's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Amaya securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Amaya securities was

21

substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Amaya's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

54.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    During the Class Period, the Individual Defendants participated in the operation and management of Amaya, and conducted and participated, directly and indirectly, in the conduct of Amaya's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Amaya's business practices.

56.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Amaya e's financial condition and results of operations, and to correct promptly any public statements issued by Amaya which had become materially false or misleading.

57.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Amaya disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Amaya to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Amaya within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Amaya securities.

58.    Each of the Individual Defendants, therefore, acted as a controlling person of Amaya. By reason of their senior management positions and/or being directors of Amaya, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Amaya to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Amaya and possessed the power to control

23

the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Amaya.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 5, 2016                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence Rosen
Laurence Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff