# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CARMACK, MICHAEL NEUBERGER, BAHRAM SALEHIAN, AND ANDREW SONG, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>*- against -*<br><br>AMAYA INC., DAVID BAAZOV, AND DANIEL SEBAG, DIVYESH GADHIA, AND HARLAN GOODSON,<br><br>Defendants. | Case No. 16-CV-01884-JHR-JS<br><br><br>Hearing Date: December 4, 2018 |

# LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................... **Error! Bookmark not defined.**

PRELIMINARY STATEMENT ............................................................................1

SUMMARY OF THE LITIGATION AND SETTLEMENT ...................................3

I.      PROCEDURAL HISTORY OF THE LITIGATION .....................................3

II.     ARGUMENT.................................................................................................6

      A.      The Settlement Warrants Final Approval ............................................6

      B.      The Proposed Settlement Carries a Presumption of Fairness ..............7

      C.      The *Girsh* Factors Support Final Approval..........................................8

            1.      Complexity, Expense, and Likely Duration of Litigation and the Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial............................10

            2.      Stage of Proceedings and Maturity of Underlying Substantive Issues ....................................................................11

            3.      Range of Reasonableness of Settlement Fund...........................13

            4.      The Plan of Allocation is Fair and Reasonable ........................15

III.    CERTIFICATION OF THE CLASS IS APPROPRIATE............................16

IV.     NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS.............................................................................................17

CONCLUSION .........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carson v. Am. Brands, Inc.*,
　450 U.S. 79 (1981) ...................................................................................7

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974) ....................................................................9

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001) ......................................................................7

*Ehrheart v. Verizon Wireless*,
　609 F.3d 590 (3d Cir. 2010) ....................................................................6

*Eisen v. Carlisle & Jacquelin*,
　417 U.S. 156 (1974) ...............................................................................18

*Girsh v. Jepson*,
　521 F.2d 153 (3d Cir. 1975) .................................................................8, 9

*Glickenhaus & Co. v. Household Int'l, Inc.*,
　787 F.3d 408 (7th Cir. 2015) .................................................................11

*In re Am. Bank Note Holographics, Inc.*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................10

*In re AT&T Corp. Secs. Litig.*,
　455 F.3d 160 (3d Cir. 2006) ..................................................................14

*In re Imprelis Herbicide Mktg.*,
　296 F.R.D. 351 (E.D. Pa. 2013)............................................................13

*In re NFL Players Concussion Injury Litig.*,
　821 F.3d 410 (3d Cir. 2016) .......................................................8, 10, 13

*In re Processed Egg Prods. Antitrust Litig.*,
　284 F.R.D. 249 (E.D. Pa. 2012)..............................................................8

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
　3:09 CV 1293 VLB, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) .................10

*In re ViroPharma Inc. Sec. Litig.*,
No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ...............14

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .....................................................................7, 8, 13

*Krell v. Prudential Ins. Co. of Am. (In Re Prudential Ins. Co. Am.*
*Sales Practice Litig. Agent Actions)*,
148 F.3d 283 (3d Cir. 1998) .................................................................6, 8, 9, 13

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir.
1999) ................................................................................................................14

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................................11

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .......................................................................15, 16

*Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985) ...............................................................................19

**Statutes**

15 U.S.C. § 77k ......................................................................................................5

15 U.S.C. § 77o ......................................................................................................5

15 U.S.C. § 77z-1(a)(7)........................................................................................18

15 U.S.C. § 78j(b) ..................................................................................................5

15 U.S.C.§ 78t(a) ...................................................................................................5

15 U.S.C. § 78u-4(a)(7) ........................................................................................18

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................*passim*

**Other Authorities**

17 C.F.R. § 240.10b-5............................................................................................5

iii

William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 *Newberg on Class Actions* § 13.44 (5th ed. 2014)...............................................................7

Lead Plaintiffs James Carmack, Michael Neuberger, Bahram Salehian, and Andrew Song (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their unopposed motion for final approval pursuant to Rule 23(e), Fed. R. Civ. P., of a $5.75 million settlement ("Settlement") of this securities fraud class action filed on behalf of purchasers of securities in Amaya Inc. (now known as The Stars Group Inc. and hereinafter referred to as "Amaya" or the "Company") during the period June 8, 2015 and March 22, 2016, both dates inclusive (the "Class Period"). The terms of the Settlement are set forth in the Stipulation of Settlement dated August 3, 2018 (the "Stipulation")(Doc. No. 141), preliminarily approved by this Court on September 13, 2018 (Doc. No. 144).[1]

## PRELIMINARY STATEMENT

After more than two years of litigation, Plaintiffs, through Lead Counsel, propose for this Court's final approval: (1) a settlement and dismissal of this action against Defendants in exchange for the payment, through Defendants' insurance carrier(s) of $5,750,000 in cash; (2) certification of this action as a class action under Rule 23 to effectuate the class settlement; and (3) a Plan of Allocation for the disbursement of the proceeds among Settlement Class members.[2]

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation.

[2] A memorandum in support of Lead Counsel's request for an award of attorneys' fees is filed concurrently herewith.

The $5.75 million Settlement is fair, reasonable, and adequate, as well as an excellent result for the Class. Plaintiffs secured a recovery representing at least 22% of the maximum recoverable damages, which is well within the range of reasonableness for class action settlements.[3] Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher.

Based upon Lead Counsel's investigation of the Settlement Class' claims, past experience in similar cases, extensive discovery disputes between the parties, and the likely battles that would ensue concerning class certification, damages, and liability, continuing the litigation would have only drained the resources available to compensate investors and substantially delayed payment of any recovery. The Settlement provides the Class with meaningful recovery without the need for continued litigation that would inevitably have been extremely time-consuming and expensive, requiring the aid of experts.

This Preliminary Approval Order preliminarily certified the following Settlement Class:

_____

[3] This estimate is based on a 21.5% decline in the price of Amaya's stock on March 23, 2016 (after the Bureau de Décision et de Révision entered an order to enjoin the recipients of Baazov's inside information from trading further or withdrawing any funds from their implicated accounts, which was subsequently followed the same day by the Autorité des Marchés Financiers ("AMF"), the securities regulatory authority in the Province of Quebec, filing five charges of insider trading against Baazov), multiplied by the number of Amaya shares estimated by Plaintiffs' expert to have been purchased by Class Members during the Class Period and still held by such Class Members as of that date.

> All persons or entities that purchased Amaya securities between June 8, 2015 and March 22, 2016 (both dates inclusive) and who were damaged thereby. Excluded from the Class are Defendants, all current and former directors and officers of Amaya during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above.

Thereafter the Notice of the Settlement and Proof of Claims were mailed to 24,101 potential Class Members and nominees, and a Summary Notice was published on September 24, 2018 in *Investor's Business Daily* and over *Globe Newswire. See* Rosen Decl., Exhibit 1, Cormio Decl. at ¶¶ 12, 13. The deadline for filing objections and requests for exclusion is November 20, 2018.

Thus far, no objections and no requests for exclusion have been received by Lead Counsel or the Claims Administrator. *Id.* at ¶ 18. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement, finally certify the Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

The hearing on these matters has been scheduled for December 4, 2018.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

## I.    PROCEDURAL HISTORY OF THE LITIGATION

This Action was first filed on April 5, 2016 in the District of New Jersey. By order dated June 27, 2016, the Court appointed James Carmack, Michael Neuberger, Bahram Salehian, and Andrew Song as Lead Plaintiffs, and The Rosen Law Firm, P.A. as Lead Counsel. An Amended Complaint was filed August 31,

2016 asserting securities law claims against Defendants on behalf of Amaya investors during the Class Period.

Amaya, a company that has always been in the business of gambling, engaged in multiple acquisitions over the course of a few years. The Amended Complaint alleges that as CEO of Amaya, Baazov possessed valuable insider information regarding these acquisitions that he disseminated to friends, relatives, and associates in contravention of securities regulations and Amaya's own policies prohibiting insider trading. The Amended Complaint further alleges that Defendants continued to perpetuate the fraud by publicly and repeatedly denying any wrongdoing in public filings and representing that they had disclosed all fraud involving management to the Board of Directors, even when the Autorité des Marchés Financiers ("AMF"), the securities regulatory authority in the Province of Quebec, began to investigate Baazov for insider trading in 2014. That initial investigation, later expanded in 2015, focused on trading activities relating to Amaya's acquisition of the Oldford Group, Inc. This particular acquisition propelled Amaya to the number one publicly traded online gaming company in the world because it led to Amaya's entry into the United States market via a temporary authorization to operate in New Jersey.

The Amended Complaint additionally alleges that the expansion of the investigation in 2015 led to a request by the AMF to its Bureau de Décision et de

Révision ("BDR") to enjoin the recipients of Baazov's inside information from further insider trading or withdrawing any ill-gotten funds from their implicated accounts. The BDR's order granting the AMF's request extensively describes the evidence of Baazov's scheme, which spanned many years, and which the BDR found "preponderant." The AMF then filed five charges of insider trading against Baazov that very same day, which the Amended Complaint asserts led Amaya shares to decline $3.07 per share or approximately 21.5% from its previous closing price to close at $11.18 per share on March 23, 2016.

The Amended Complaint charged that Defendants' conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5) and Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o). From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability or damages.

Defendants moved to dismiss the Amended Complaint. On June 15, 2017, the Court granted in part and denied in part Defendants' motions to dismiss. Defendants moved for reconsideration of the MTD Order on June 23, 2017. On October 31, 2017, the parties voluntarily participated in a full day mediation session presided over by nationally recognized mediator, Hunter R. Hughes, Esq. That mediation was unsuccessful and the parties continued in discovery.

Following that in-person mediation session, the parties continued their negotiations with the assistance of Mr. Hughes, and conducted direct negotiations in another face-to face meeting on February 21, 2018, and ultimately accepted Mr. Hughes' mediator proposal, which resulted in an agreement to resolve the Action for a cash payment of $5,750,000 for the benefit of the Settlement Class. [4]

Thereafter, in accordance with the Memorandum of Understanding the parties executed, Defendants produced "confirmatory discovery" on July 10, 2018, which included a copy of the AMF and Defendants' exhibits from the penal proceeding against Defendant Baazov et al. in Quebec.  Plaintiffs have reviewed these documents.

## II.    ARGUMENT

### A.    The Settlement Warrants Final Approval

A court may approve a proposed class-action settlement if it is "fair, reasonable, and adequate." *Krell v. Prudential Ins. Co. of Am. (In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 316 (3d Cir. 1998). There is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)

---

[4] The Court denied the reconsideration motion on February 26, 2018.

(citations omitted). Moreover, the Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. See William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 *Newberg on Class Actions* § 13.44 (5th ed. 2014).

**B.    The Proposed Settlement Carries a Presumption of Fairness**

The Third Circuit has directed district courts to "apply an initial presumption of fairness when reviewing a proposed settlement where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (citation omitted).

Here, all four elements are met. The proposed Settlement is the product of arm's-length negotiations among counsel with extensive experience in securities class-action litigation. The parties negotiated with the assistance of an experienced mediator who recommended the $5,750,000 settlement amount. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of

collusion and undue pressure."). In addition, as noted above, Defendants produced confirmatory discovery, which Plaintiffs have reviewed.  The Third Circuit has explicitly held that even informal discovery can suffice to invoke the presumption of fairness. *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) ("What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims. Moreover, requiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip—the costs of formal discovery itself—off the table during negotiations. This could deter the early settlement of disputes."); *see also Prudential*, 148 F.3d at 319; *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (applying presumption of fairness, despite lack of formal discovery, because counsel "conducted informal discovery, including … independently investigating the merits").  Lastly, no objections have been filed. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 (finding presumption of fairness where "only a small fraction of the purported class" objected.)

### C.    The *Girsh* Factors Support Final Approval

The Third Circuit has identified nine factors courts should consider when evaluating a class-action settlement: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the

stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted); *accord City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). As explained in Lead Plaintiffs' Memorandum Of Law In Support Of Unopposed Motion For Preliminary Approval Of Class Action Settlement, (Doc. No. 140), and again herein, the *Girsh* factors support approval of the Settlement. The Third Circuit has also suggested in *Prudential* that courts consider certain additional factors described as "permissive and non-exhaustive." They include:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6]

whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re NFL Players Concussion Injury Litig.*, 821 F.3d at 437 (citing *Prudential*, 148 F.3d at 323).

### 1.    Complexity, Expense, and Likely Duration of Litigation and the Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial

Here, while Plaintiffs believe this case is strong, the "risk, expense, complexity, and likely duration of further litigation" were likely to be substantial. This is particularly so given that the Company, and therefore many of the relevant witnesses and documents, are located in Canada. The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings.

There are significant risks to proving liability, materiality, loss causation and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain (despite Lead Counsel's confidence). *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at *6 (D. Conn. Aug. 20, 2012). Although Lead Counsel believes that this is a strong case, certain risks and uncertainties exist, and numerous other securities class

actions have been prosecuted in the belief that they were meritorious, only to lose at summary judgment, at trial, or on appeal.[5]

Further, while Plaintiffs are highly confident that class certification is appropriate for this case and that their anticipated motion for class certification would have prevailed, Defendants likely would have contested any class certification motion vigorously.

If the parties did not agree to settle, they would have faced an expensive trial with an uncertain outcome. The jury would have had to determine numerous complex securities law issues and navigate battles of the experts regarding market efficiency, loss causation, and damages.  All of this would have been time consuming, without necessarily increasing the amount of recovery given the limited nature of the most likely source of recovery, the insurance policies.

### 2.    Stage of Proceedings and Maturity of Underlying Substantive Issues

On June 15, 2017, the Court granted in part and denied in part Defendants' motions to dismiss.  While the discovery process had begun, the parties still faced extensive fact and expert discovery, including depositions as well as the production and review of voluminous documents (beyond that which Defendants have

---

[5] Many plaintiffs have won at trial, only to lose on appeal. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

produced as confirmatory discovery). Plaintiffs also planned to file a motion for class certification, supported by a market efficiency expert, which Defendants likely would have opposed, proffering their own market efficiency expert. All of this would have substantially reduced the remaining available insurance.

In considering whether to enter into the Settlement, Plaintiffs weighed the value of an immediate guaranteed settlement against the challenges and significant proceedings that remained ahead, such as: (i) fact depositions; (ii) expert reports, depositions, and *Daubert* motions contesting the qualifications and opinions of each expert; (iii) summary judgment briefing; (iv) trial preparation, including numerous *in limine* motions; (v) trial; and (vi) appeals.

Although the parties had not completed discovery, Lead Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement. By the time the Settlement was reached, Lead Counsel had: (1) reviewed and analyzed Class Period and pre-Class Period public filings, annual reports, press releases, quarterly-earnings-call and industry-conference transcripts, and other public statements; (2) reviewed and analyzed stock trading data relating to the Company as well as analyst reports and major financial news service reports; (3) consulted with experts; (4) drafted the initial complaint and the Amended Complaint to comply with the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (5) researched and drafted an opposition to Defendants' motion to

dismiss; (6) prepared for and engaged in a mediation, including drafting a mediation statement; (7) negotiated the final terms of the Settlement; and (8) reviewed the documents produced in confirmatory discovery.

Accordingly, Lead Counsel "had developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 439. Lead Counsel thus understood the strengths and weaknesses of the case and had an ample basis for making an informed judgment concerning the fairness of the settlement. *See In re Imprelis Herbicide Mktg.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013) ("[B]ecause a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of a settlement.").

### 3.   Range of Reasonableness of Settlement Fund

These factors focus on "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing...compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322 (citation omitted). The ultimate question is "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "However, there is no specific formula, threshold, or

equation that a Court must use to determine whether a settlement amount is reasonable. Even a settlement that is only a 'fraction of the potential recovery' can be deemed appropriate." *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at \*39 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Amaya's stock price fell 21.5% on March 23, 2016 (after the Bureau de Décision et de Révision entered an order to enjoin the recipients of Baazov's inside information from trading further or withdrawing any funds from their implicated accounts, which was subsequently followed the same day by the Autorité des Marchés Financiers ("AMF"), the securities regulatory authority in the Province of Quebec, filing five charges of insider trading against Baazov). Plaintiffs contend that a significant portion of this price drop was attributable to the revelation of fraud. Assuming that Plaintiffs could have recovered for 100% of the March 23, 2016 decline, recoverable damages for the entire Class Period would be approximately $26.2 million for the estimated 17.5 million Amaya shares that were damaged. The $5.75 million settlement amount thus reflects approximately 22% of the estimated maximum recoverable damages in this case, which is within the range of possible approval. *See, e.g., In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 (3d Cir. 2006) (affirming settlement for 4% of total damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling

14

objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *cf.* Dr. Renzo Comoli & Svetlana Starykh, NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review* at 32 (Jan. 20, 2015), http://www.nera.com/content/dam/nera/publications/2015/Full_Year_Trends_2014 _0115.pdf (noting that, in securities class actions with $100-$200 million of investor losses, the median settlement between 1996 and 2014 was for 3.3% of investor losses).

### 4.     The Plan of Allocation is Fair and Reasonable

Plaintiffs have proposed a plan to allocate the net proceeds of the Settlement among Settlement Class Members, which was described in the Notice mailed to Class Members. The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a result of the Defendants' allegedly false and misleading statements. The $5.75 million in cash, less attorneys' fees and expenses, notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants in accordance with the Plan of Allocation.

A plan of allocation must be "fair and reasonable as to all participants in the fund." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (citation

omitted). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Id*. at 328. The proposed Plan of Allocation is fair, and reimburses class members based on the type and extent of their injuries. The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss attributable to the alleged fraud. Pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation "differentiat[e] within a class based on the strength or weakness of the theories of recovery." *Id.,* Rosen Decl. ¶¶ 38-41; Notice at 10.

Here, the proposed Plan of Allocation related to the Action is rational and consistent with Plaintiffs' theory of the case.  The Plan was formulated by Lead Counsel, in consultation with damages experts, with the goal of reimbursing the class members in a fair and reasonable manner, and reviewed by Plaintiffs.  For these reasons, Lead Counsel believes the Plan of Allocation fairly compensates the class members and should be approved.

## III.   CERTIFICATION OF THE CLASS IS APPROPRIATE

The parties have stipulated to the certification, for settlement purposes only, of the following Rule 23(b)(3) class:

> All persons or entities that purchased Amaya securities between June 8, 2015 and March 22, 2016 (both dates inclusive) and who were

16

damaged thereby. Excluded from the Class are Defendants, all current and former directors and officers of Amaya during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above.

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested that the Court certify the Settlement Class for settlement purposes so that notice of the proposed Settlement, the final approval hearing, and the rights of class members to request exclusion, object, or submit proofs of claim could be issued. In its Preliminary Approval Order, (Doc. No. 144), this Court preliminarily certified the Settlement Class. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in the Plaintiff's Memorandum of Law in Support of Unopposed Motion For Preliminary Approval of Class Action Settlement (Doc. No. 140), incorporated herein by reference, Plaintiffs now requests that the Court reiterate its prior certification (i) of the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); and (ii) of Plaintiffs as Class Representatives, as well as its appointment of Lead Counsel as Class Counsel for the Settlement Class.

## IV.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Before finally approving a settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1). A notice program must provide the "best notice

practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) (citing Fed. R. Civ. P. 23 (c)(2)).

Both the substance of the notice and the means of dissemination satisfied these standards. The Court-approved notice includes all the information required by Rule 23 (c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; and (ix) the binding effect of a judgment on Class members. *See* Cormio Decl., Ex. A.

The notice program was carried out by JND Legal Administration, a nationally-recognized third-party claims administrator, under the supervision of Lead Counsel. In accordance with the Court's orders, the Summary Notice was published on September 24, 2018, the Notice and Proof of Claim have been mailed to 24,101 potential Class members and nominees. *See* Cormio Decl. ¶¶ 12, 13. Since September 20, 2018, the Notice, Proof of Claim, Stipulation of Settlement, and other documents have been posted at www.amayasecuritieslitigation.com, and

the Claims Administrator has maintained a toll-free telephone number to answer any questions from Class members. *Id.* ¶¶ 14-15. As of November 12, 2018, not a single Class member has objected to the Settlement or requested exclusion from the Class. *Id.* ¶ 18.

This combination of individual first-class mail to all Class members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, transmitted over the newswire, and posted on the internet, was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B); *see Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement, finally certify the Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

Dated: November 13, 2018                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: */s/Laurence M. Rosen*
                                            Laurence M. Rosen, Esq.
                                            609 W. South Orange Avenue, Suite 2P
                                            South Orange, NJ 07079
                                            Tel: (973) 313-1887
                                            Fax: (973) 833-0399
                                            Email: lrosen@rosenlegal.com

                                            *Lead Counsel for Plaintiffs*

                                            **POMERANTZ LLP**
                                            Jeremy A. Lieberman
                                            Tamar Weinrib
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            Email: jalieberman@pomlaw.com
                                                      taweinrib@pomlaw.com

                                            *Additional Counsel to Plaintiffs*